IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDY ANGELIQUE LUCERO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-1145-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-31). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 15, 2021, the application date. (TR. 19). At step two, the ALJ determined Ms. Lucero suffered from the following severe impairments: generalized anxiety disorder, major depressive disorder, obesity, cervical radiculopathy, ANA positive, migraines, and mild to moderate right shoulder tendinitis and acromioclavicular arthropathy. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Ms. Lucero retained the residual functional capacity (RFC) to:

> [p]erform  light work as defined in 20 CFR 416.967(b) except the claimant could occasionally climb ramps and stairs, is unable to climb ladders and scaffolding, could occasionally stoop, kneel, crouch, and crawl, and would need to avoid unprotected heights and dangerous moving machinery. The claimant is capable of understanding, remembering, and applying simple multistep instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple multistep work tasks with routine supervision. The claimant is capable of interacting with and responding

2

appropriately to others in a routine work setting; however is limited to just occasional work-related interaction with the general public. The claimant would be capable of adapting to a routine work setting where changes are infrequent, well-explained, and introduced gradually. The claimant is capable of recognizing and avoiding normal workplace hazards. The claimant needs to avoid concentrated exposure to loud noises, dust, fumes, and odors. The claimant is limited to occasional reaching overhead bilaterally. The claimant would be limited to frequent but not constant handling and fingering bilaterally.

(TR. 24).

Because Plaintiff had no past relevant work,[1] the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 55-56). Given the limitations, the VE identified three "light" jobs from the Dictionary of Occupational Titles (DOT). (TR. 57). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Lucero was not disabled based on her ability to perform the identified jobs. (TR. 30).

## III.   ISSUE PRESENTED

On appeal, Ms. Lucero alleges error in the evaluation of her subjective allegations regarding her migraine headaches. (ECF No. 11:5-12).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952

---

[1] (TR. 29).

3

F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

Ms. Lucero alleges that the ALJ erred in considering Plaintiff's subjective allegations and the consistency of her statements regarding her migraine headaches. (ECF No. 11:5-13). The Court agrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that

4

could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B.     Plaintiff's Subjective Allegations and Testimony

Plaintiff completed two function reports at the initial and reconsideration levels of disability. In those reports, Plaintiff reported having "constant migraine headaches that come with nausea and face pain because headaches are so bad." (TR. 209); *see* TR. 230. Plaintiff reported that the migraines "keep [her] from daily life." (TR. 209). Ms. Lucero reported that she often woke up at night with a headache and sometimes her pain required her to receive help for daily activities. (TR. 210). Plaintiff explained that her "constant headaches" kept her from doing much housework or yardwork, lifting, bending, stooping, climbing, kneeling, or squatting. (TR. 211, 235).

At the administrative hearing, Plaintiff testified that she suffered from a migraine headache "nearly every day." (TR. 44). Ms. Lucero testified that as of late, she had not been taking her prescribed migraine medication because her insurance would no longer cover it. (TR. 45). However, when she was taking medication, Plaintiff stated that the medication changed the frequency and severity of the headaches, allowing her to get out of bed more. (TR. 45). Ms. Lucero stated that the medication would work for a few hours and then wear off, requiring her to go back to bed. (TR. 45). She estimated that this pattern occurred 15-20 days per month and when she had the migraines, she was sensitive to light and noise and had to "wrap [her] head in an ice-cold towel and just lay there in the complete dark." (TR. 46).

Medical evidence supports Plaintiff's claims. In September of 2021, Plaintiff reported to the emergency room complaining of a severe headache—an "8 out of 10"—

accompanied by nausea and vomiting. (TR. 354). In October of 2021, Mr. Lucero reported a right-sided headache with pain behind her eye. (TR. 341). Plaintiff stated that she had been getting the headaches fairly often, up to 10 times per month and during the headaches, she experienced shakiness and nausea. (TR. 341, 525). On November 23, 2021, Plaintiff reported "having a lot of headaches lately" and stated that although the headaches were typically behind her right eye, that day it consumed her entire forehead and was accompanied by throbbing pain, constant nausea, and sensitivity to light and sound. (TR. 611). On January 11, 2022, Plaintiff reported daily headaches to her physician, Branson Kester, and reported that the medication prescribed had caused her nausea. (TR. 326, 333, 530). Dr. Kester diagnosed Plaintiff with "Intractable migraine without aura and with status migrainosus." (TR. 327, 335, 342, 534, 537).[2]

In August 2022, Ms. Lucero saw neurologist Aaron Farrow for further management of her migraine headaches. Plaintiff reported constant migraines since 2015 following an injury to her head. (TR. 655). According to Plaintiff, since 2016, she has suffered migraine headaches at least 15 days per month, each lasting more than 24 hours. (TR. 655).

---

[2] "Status Migrainosus" is defined as a migraine attack that lasts longer than 72 hours. The symptoms of status migrainosus match what you feel during a typical migraine, with throbbing, one-sided head pain, light sensitivity and nausea. *See* https://myclevelandclinic.org/health/diseases/status-migrainosus (last visited June 4, 2024).

### C.     The ALJ's Evaluation of Plaintiff's Subjective Allegations

In formulating the RFC, the ALJ stated that he had considered Plaintiff's symptoms and the consistency of her subjective allegations with other evidence of record. (TR. 18). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized Plaintiff's applications for benefits, functions reports, disability reports, and hearing testimony, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 25). The ALJ then discusses Plaintiff's headaches, stating:

> The claimant has also reported headaches and migraines, noting same began after a closed head injury prior to the relevant period, and she treated for her migraines with medication as needed. She reported her headaches were triggered by prolonged heat and cold exposure, and reported associated visual changes, sensory phobias, dizziness, nausea, and photophobia and phonophobia. However, the record contains no current head or brain imaging, with normal findings prior to the relevant period, and consistently noted normal neurological findings.

(TR. 26). Later in the decision, the ALJ again recognized the migraines and stated that the headaches were accommodated in the RFC by limiting Plaintiff to "light duty work with occasional climbing of ramps and stairs, no climbing of ladders and scaffolding, occasional stooping, kneeling, crouching, and crawling, no exposure to unprotected heights and dangerous moving machinery, no concentrated exposure to loud noises,

dust, fumes, and odors, only occasional overhead reaching, and frequent but not constant handling and fingering." (TR. 28-29).

### D. Error in the ALJ's Evaluation of Plaintiff's Subjective Allegations

As an initial matter, many courts have noted that migraines present a particular difficulty. *See, e.g., Groff v. Comm'r of Soc. Sec.*, No. 7:05-CV-54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008) (recognizing difficulty of objectively identifying migraines as medically determinable impairments); *Federman v. Chater*, No. 95 Civ. 2892 (LLS), 1996 WL 107291, at *2–3 (S.D.N.Y. Mar. 11, 1996) (same); *see also Abdon v. Astrue*, No. 10-96-GWU, 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010) (noting difficulty of evaluating subjective allegations of pain stemming from migraines for purposes of evaluating pain in the context of determining the RFC); *McCormick v. Sec'y of Health & Human Servs.*, 666 F. Supp. 121, 123 (E.D. Mich. 1987) (noting "[migraine] headaches are not traced easily to an objective medical condition"), *aff'd*, 861 F.2d 998 (6th Cir. 1988). In *Groff*, the district court acknowledged "the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines." *Groff*, 2008 WL 4104689, at *7–8. The *Groff* court cited medical literature noting:

> [T]he cause [of a migraine] is unknown and the pathophysiology is not fully understood.... The mechanism for migraines is not well defined, but several triggers are recognized[, including] insomnia, barometric pressure change, and hunger.... Symptoms usually follow a pattern in each patient.... The patient may have attacks daily or only once every several months. Diagnosis is based on the symptom patterns when there is no evidence of intracranial pathologic changes. Migraine is more

> probable when the patient has a family history of migraine.... No diagnostic tests are useful, except to exclude other causes. Treatment depends on the frequency of attacks and the presence of comorbid illness. In general, treatment can be classified as prophylactic, abortive, or analgesic.

*Id.* (quoting THE MERCK MANUAL 1376 (17th ed. 1999)).

Here, although the ALJ acknowledged the migraines, he seemed to: (1) discount them by relying on an absence of abnormal neurological findings and (2) accommodate them in the RFC as written. However, as previously discussed above, migraines are not necessarily susceptible to objective findings. *See, supra. See also Barrus v. Berryhill*, No. 1:16-CV-0056-JNP-EJF, 2017 WL 4772580, at *9 (D. Utah Sept. 16, 2017) ("Holding the absence of an objective diagnostic test for migraines against a claimant and finding the claimant's subjective complaints not credible as a result makes no sense. The claimant is no more or less credible based on the state of [the] medical field's development in migraine diagnosis and treatment."). Thus, "the relevance of the objective evidence is not clear from the ALJ's decision." *Tomer v. Kijakazi*, No. CIV-22-1020-P, 2023 WL 4235544, at *5 (W.D. Okla. June 28, 2023).

Furthermore, as stated, the ALJ allegedly accommodated the migraines in the RFC by limiting Plaintiff to "light duty work with occasional climbing of ramps and stairs, no climbing of ladders and scaffolding, occasional stooping, kneeling, crouching, and crawling, no exposure to unprotected heights and dangerous moving machinery, no concentrated exposure to loud noises, dust, fumes, and odors, only occasional overhead." (TR. 28-29). But these accommodations essentially ignored Plaintiff's

testimony and medical evidence documenting the fact that Ms. Lucero became basically incapacitated when she suffered migraines—being sensitive to light and sound and experiencing shakiness and nausea for more than 15 days per month which require her to lie down. *See supra*.

When Plaintiff's attorney proffered limitations owing to the headaches to the VE which could occur twice weekly, she testified that the jobs she had identified for Plaintiff would not be available. (TR. 59). Obviously the ALJ chose not to adopt the particular limitations relating to Plaintiff's migraines—i.e.—the need for unscheduled breaks to lie down. That was his prerogative, but he had a duty to explain why. *See supra*, SSR 16-3p, 2016 WL 1119029, at *9 (stating that the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review). The ALJ stated that Plaintiff's symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," *see* TR. 25, but he failed to explain what, exactly, those inconsistencies were. *See Harris v. Kijakazi*, No. 22-94-STE, 2022 WL 4543224, at * 3 (Sept. 28, 2022) (reversing and remanding for further evaluation of Plaintiff's subjective allegations regarding migraines because "the ALJ never stated how any evidence contradicted or was inconsistent with Plaintiff's allegations of at least 9 debilitating migraine headaches per month which were made worse by sound, light, and movement, and which required her to lie down in a dark quiet room."). "Because

the ALJ did not ... sufficiently articulate his reasoning, [the Court] cannot conduct a meaningful review of the pain assessment." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017). As a result, remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on July 17, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE